Eastern District of Kentucky
FILED
APR 09 2010
At Ashland
LESLIE G. WHITMER
Clerk, U.S. District Court

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at ASHLAND

Civil Action No. 08-81-HRW

NICOLE WILDS
and
DAVID WILDS,                                                     PLAINTIFFS,

v.             **MEMORANDUM OPINION AND ORDER**

BONNIE LAUDENBACH, M.D.,
ASHLAND WOMEN'S HEALTH,
TRI-STATE RADIOLOGY PSC
and
MAYOLA BOYKIN, M.D.,                             DEFENDANTS.

This matter is before the Court upon Defendants Bonnie Laudenbach, M.D. and Ashland Women's Health's Motion for Partial Summary Judgment [Docket No. 126] and Defendants Mayola Boykin, M.D. and Tri State Radiology, PSC's Motion for Summary Judgment [Docket No. 125]. This matter has been fully briefed by the parties and stands ripe for decision [Docket Nos. 154 and 162].

I.     BACKGROUND

This case arises from a June 20, 2007 operative procedure performed by on Dr. Laudenbach of Ashland Women's Health on Nichole Wilds. Dr. Laudenbach was to perform a tubal ligation. However, the tubal ligation was not done.

According to Dr. Laudenbach, the surgery was complicated by impaired visualization of the tubes and ovaries, caused by surgical adhesions from other surgical procedures, distortion of Nichole Wilds' pelvic anatomy and her advanced weight. However, she continued with the procedure. Plaintiffs allege that during the course of this procedure, Dr. Laudenbach burned Nichole Wilds' bladder by cauterization and destroyed a portion of her small bowel.

Nichole Wilds was released from the hospital later that day, apparently unaware that the tubal ligation was not performed.

About eight hours following surgery, she began experiencing severe nausea, vomiting and abdominal pain.

The next day, on June 21, Nichole Wilds was seen by Dr. Laudenbach at her office. She ordered Nichole Wilds to be re-admitted to KDMC based upon these symptoms. Included in her admitting orders were certain radiology studies, including a CT scan of her abdominal area.

A scan was taken and between 8:30 and 9:30 that evening, was read by Dr. Boykin. His written report of the scan does not document any abnormal findings. The report is ambiguous, at best, and does not order any follow-up action. However, Dr. Boykin testified that after he read Nichole Wilds' scan, he phoned the nurse on duty to report abnormalities reflected in the scan. He recalls

contacting the nurses' station in this specific case because his findings were "unusual." Specifically, he testified that the scan showed an abnormality in the pelvis and, based upon the same, he determined that Nichole Wilds needed to be reevaluated and may possibly need surgery. Dr. Boykin stated that upon calling the nurse, he was informed that Dr. Laudenbach was there at that he should speak directly to her. Although various nurses have been deposed, none had any recollection of this specific event.

There is, in addition, a disagreement as to a supposed communication between Drs. Laudenbach and Boykin pertaining to the scan. Dr. Boykin testified that he told Dr. Laudenbach the scan was abnormal. Dr. Laudenbach testified that she did not speak to Dr. Boykin in this regard.

On the morning of June 22, Defendant Laudenbach reexamined Nichole Wilds, whose symptoms had grown worse during the night. Dr. Laudenbach ordered a general surgical consultation with William Dunlop, M.D. He examined her and ordered and emergency laporotomy.

Nichole Wilds underwent an emergency laporotomy later that day, performed by Dr. Dunlop. Defendant Laudenbach scrubbed in during this procedure and performed a tubal ligation.

There are no notes, records or operative reports by Dr. Laudenbach

pertaining to the June 22 surgery. The only record of her involvement is Dr. Dunlop's post-operative report. Dr. Laudenbach claims that she discovered the fallopian tubes to be intact during this surgery and then proceeded with sterilization at that time. Plaintiffs suggest that Laudenbach was well aware of the botched procedure and intervened in the second surgery to repair the damage without their knowledge.

Nichole Wilds' post-operative course was complicated by an infection, requiring a prolonged hospital stay. She was discharged in early July. She, ultimately, was able to return to work in the fall of 2007.

Plaintiffs filed this civil action on June 2, 2008 against Bonnie Laudenbach, M.D., Ashland Women's Health, King's Daughters Medical Center, Mayola Boykin, M.D. and Tri-State Radiology [Docket No. 1].[1]

Plaintiffs allege that Defendant Laudenbach negligently performed the procedure, resulting in injury to Plaintiffs and prompting the performance of an emergency laporotomy. Plaintiffs also allege that Defendant Laudenbach performed a second tubal ligation upon Plaintiff Nicole Wilds without her consent or authorization. Plaintiffs further claim that Defendant Mayola Boykin, M.D. failed to meet the standard of care with regard to his interpretation of certain x-

---

[1] King's Daughters Medical Center has been dismissed from this civil action.

rays taken of Plaintff Nichole Wilds.

Plaintiffs claim that as a result of the wrongful acts of the Defendants, Nichole Wilds suffered "severe pain, emotional distress, incurred medical bills, lost income and lost the capacity to earn income and suffered permanent injuries and disfigurement." [Docket No. 1, ¶26]. Plaintiff David Wilds seeks damages for loss of consortium [Docket No. 1, ¶ 28].

Defendants Laudenbach and Ashland Women's Health seek judgment as a matter of law as to Plaintiffs' claims for battery and fraudulent concealment.

Defendants Boykin and Tri-State Radiology seek judgment as a matter of law. Specifically, they argue that Plaintiffs have failed to identify expert witnesses who will testify that Dr. Boykin deviated from the applicable standard of care in providing radiology services to Plaintiff Nichole Wilds and that such deviation was a substantial factor in causing Plaintiffs' injuries. This failure, these Defendants contend, obviates all questions of material fact and warrants judgment in their favor.

## II. SUMMARY JUDGMENT STANDARD

In 1986, the United States Supreme Court set forth the standard for summary judgment in a trilogy of cases: *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *Celotex v. Cartett*, 477 U.S.

317. 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Following this precedent and Fed.R.Civ.P. 56(c), the moving party is entitled to judgment as a matter of law when "[t]he pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact." Summary judgment is mandated against a party who has failed to establish an essential element of his or her case after adequate time for discovery. In such a situation, there is no genuine issue of material fact as the failure to prove an essential fact renders all other facts irrelevant. *Celotex v. Cartett*, 477 U.S. at 322-323.

The United States Court of Appeals for the Sixth Circuit has interpreted the United States Supreme Court's trilogy as requiring the nonmoving party to produce enough evidence, after having had a reasonable opportunity to conduct discovery, so as to withstand a directed verdict motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).

III. ANALYSIS

    A. **Plaintiffs can establish the essential elements of battery so as to preclude summary judgment.**

Battery is an intentional tort which requires an unwanted touching of the

victim. *See generally, Brewer v. Hillard*, 15 S.W.3d 1 (Ky. App. 1999). Kentucky recognizes an action for battery when a physician performs an operation without the consent of a patient. *Vitale v. Henchey*, 24 S.W.3d 651, 656 (Ky. 2000); *see also, Hoofnel v. Segal*, 199 S.W.3d 147 (Ky. App. 2006).

Plaintiffs allege that Dr. Laudenbach performed a tubal ligation on June 22, 2007 without their consent, thereby committing a battery. Defendant Laudenbach maintains that the consent document signed prior to the first procedure operates as consent for the June 22 surgery.

Defendant Laudenbach's argument, however, ignores the possibility, as argued by Plaintiffs, of a withdrawal of consent. Plaintiffs allege that they did not consent to the tubal ligation performed on June 22. Indeed, they claim that they were not even made aware of this Defendant's intention to participate in the June 22 surgery. These are factual issues of paramount importance in this case.

Further, contrary to Defendant's assertion, the issue of the scope of the consent does not necessarily require expert testimony. *See e.g. Sanborn v. Zollman*, 2002 WL 1580424 at *4 (6th Cir. 2002). Rather, a jury may, and should, decide this issue. Therefore, summary judgment is not appropriate as to Plaintiffs' claim for battery.

**B.     Plaintiffs have failed to properly state a claim for fraudulent**

### concealment and Defendants Laudenbach and Ashland Women's Health are entitled to summary judgment as to this claim.

Three elements must be alleged with particularity in order to establish fraudulent concealment: (1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts. *Norton-Children's Hospital, Inc. V. James E. Smith & Sons, Inc.*, 658 F.2d 440, 443 (KY. 1981).

Defendant Laudenbach argues that Plaintiffs cannot satisfy the second element as they filed the instant civil action within the pertinent period of limitations. The Court agrees.

Plaintiffs claim that Defendant Laudenbach's alleged action in attempting to conceal the details of the first surgical procedure constitutes fraudulent concealment. However, merely intoning "fraudulent concealment" in a Complaint is not sufficient to give rise to an action for fraudulent concealment. The very nature of this tort requires a delay in the filing if a civil action, or other remedy, at the hands of a Defendant. In this case, the Complaint was filed within the time permitted by law.

It would appear, rather, that the facts alleged by Plaintiffs in this regard

8

sound in negligence and medical malpractice, as alleged in their Complaint.

    **C.    There exists expert testimony in the record which calls into question Dr. Boykin's adherence to the standard of care and role in Plaintiffs' injuries. Therefore, Defendants Mayola Boykin and Tri State Radiology are not entitled to judgment as a matter of law.**

As a general matter, under Kentucky law, expert testimony is required to establish the breach of the standard of care as well as causation in cases for medical malpractice. *See generally, Andrew v. Begley*, 203 S.W.3d 165 (Ky.App. 2006).

Defendants Boykin and Tri-State Radiology contend that neither of Plaintiffs' two identified expert witnesses, Michael S. Baggish, M.D. and William E. Dunlop, M.D., will testify that Dr. Boykin deviated from the standard of care and that this deviation caused Plaintiffs' injuries.

It appears, however, that these Defendants over-simplify the testimony of these experts. In his deposition, Dr. Baggish testified that the alleged communication, or miscommunication, between Defendants Laudenbach and Boykin pertaining to the ct-scan, aggravated Plaintiff Nichole Wilds' condition. Based upon his deposition, these Defendants' argument that Dr. Baggish has no opinion whatsoever of Dr. Boykin is specious.

As for Dr. Dunlop, he, too, expresses criticism of Dr. Boykin. Specifically, he states that her written report was vague. He also testified that his review of the subject scan clearly showed abnormalities. He specifically stated that a perforation was evident but that it was not noted in Dr. Boykin's written report. Again, to say that Dr. Dunlop has no opinion of Dr. Boykin's actions in this matter is not a fair reading of the record.

The Court notes that Defendant Laudenbach's expert, Larry Griffin, M.D., is also critical of Dr. Boykin's written report of the subject scan. He testified that, based upon Dr. Boykin's written report alone, there would appear to be no abnormalities which would call for further tests or other follow-up.

In addition, the alleged communication between Drs. Boykin and Laudenbach creates a material issue of fact with regard to the liability of Dr. Boykin. Dr. Laudenbach testified that she does not read the CT scans. Rather she relies upon the reports of the radiologist in this regard. She testified that based upon Dr. Boykin's written report, she saw no need for emergent follow-up. Dr. Boykin testified that she told Dr. Laudenbach there were abnormalities in the scan, which would warrant follow-up and perhaps surgical intervention. Dr. Laudenbach testfied that no such conservation took place.

These Defendants' versions of events cannot coexist. It is within the

province of the jury to determine whether, in fact, Dr. Boykin notified Dr. Laudenbach of the abnormalities in Nichole Wilds' CT scan.

Finally, Dr. Boykin himself acknowledges the discrepancy between his written report and his alleged statements to Dr. Laudenbach. He gives no explanation for the conflict between his written and oral reports. Plaintiffs allege that this unexplained discrepancy supports their claim against Dr. Boykin. Although not tantamount to malpractice, the incongruity between the reports call into question Dr. Boykin's role in Nichole Wilds' serious medical condition.

This is not to suggest that the jury will ultimately condemn the actions of Dr. Boykin. However, the testimony of Drs. Baggish, Dunlop, Griffin and Boykin himself provides fodder for jury inquiry as to his adherence to the standard of care. As such, summary judgment is not warranted.

## IV. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED**:

(1) Defendants Bonnie Laudenbach, M.D. and Ashland Women's Health's Motion for Partial Summary Judgment [Docket No. 126] be **OVERRULED** as it pertains to Plaintiffs' claim for battery and **SUSTAINED** as it pertains to Plaintiffs' claim for fraudulent concealment and

(2) that Defendants Mayola Boykin, M.D. and Tri State Radiology, PSC's Motion for Summary Judgment [Docket No. 125] be **OVERRULED**.

This is an **INTERLOCUTORY** and **NON- APPEALABLE ORDER.**

This April 8, 2010.

Signed By:
*Henry R Wilhoit Jr.*
**United States District Judge**